IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FREEDOM LORENE B.,[1]

           **Plaintiff,**

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

           **Defendant.**

CIVIL ACTION

No. 21-1257-JWL

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

Plaintiff protectively filed an application for DIB on March 11, 2019. (R. 18, 183-85). After exhausting administrative remedies before the Social Security Administration

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating her migraine headaches, and the mental residual functional capacity (RFC) assessed is not supported by substantial evidence because the ALJ did not include certain additional credible mental limitations or explain their omission.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in the order presented in Plaintiff's Social Security Brief.

## II.   Migraine Headaches

Plaintiff argues,

> In assessing migraine headaches at step two of the sequential evaluation, the ALJ summarized three emergency room visits for headaches in 2019, and he concluded that migraine headaches were not severe. Specifically, he reasoned that there were no imaging studies showing abnormalities of the brain or clinical findings showing any residual effects of headaches, and that they were "not documented to have occurred with such frequency as to reasonably interfere with the claimant's ability to engage in basic work activities on a regular and continuing basis."

(Pl. Br. 8-9). (quoting R. 21-22). She argues, "The ALJ provided no assessment of migraine headaches within the RFC assessment," id. at 9, and asserts he

> erred by improperly relying on a lack of abnormal brain imaging, failing to address evidence documenting the frequency of migraine headaches that

4

>would interfere with basic work activities, and by failing to explain how this impairment affected [Plaintiff's] ability to perform basic work activities in the RFC assessment.

(Pl. Br. 9). She quotes Soc. Sec. Ruling (SSR) 96-8p, 1996 WL 374184, at *7, for the proposition that an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence." Id.

Relying on her own reports contained in medical records and her testimony at the ALJ hearing, Plaintiff argues the record evidence shows she is more than minimally limited by her migraine headaches. Id. at 10. She argues the ALJ made a selective interpretation of the evidence and ignored her reports which "did document the frequency of [her] headaches." Id. She argues imaging studies are not necessary to support the presence of headaches and unremarkable findings on examination would not be unusual in a case such as this. Id. 11 (citing Pennington v. Chater, No. 96-5177, 1997 WL 297684, at 3 (10th Cir. June 5, 1997); Baxter v. Colvin, No. 16-1005-SAC, 2016 WL 7492468, at *4 (D. Kan. Dec. 29, 2016); Hua v. Astrue, No. 07-CV-02249-WYD, 2009 WL 524991, at *6 (D. Colo. Mar. 2, 2009)).

Plaintiff argues the ALJ erred in failing to address her reports of the frequency of her headaches and thereby violated SSR 16-3p. Id. at 11-13. She argues. "At the very least, [Plaintiff's] migraine headaches satisfied the standard at step two in that the record shows they did cause some abnormality in her ability to engage in basic work activities." Id. 13. She argues that beyond the error at step two, the ALJ erred at step four by failing

5

to provide "any further meaningful discussion of the impairment of migraine headaches in the RFC [assessment]." Id.

The Commissioner argues substantial evidence supports the ALJ's step two finding that Plaintiff's migraines were not severe for any continuous 12-month period. (Comm'r Br. 5-6). She argues that, in any case, even if Plaintiff's migraines are severe within the meaning of the Act, the limitations caused by Plaintiff's other pain-producing and mental impairments were clearly accounted for by the ALJ and are sufficient to encompass the limitations produced by Plaintiff's migraine headaches. Id. at 7.

## A.     The ALJ's Findings.

The ALJ explained his evaluation of Plaintiff's headaches:

in May 2019, the claimant sought emergent care services complaining of "tension headaches with associated nausea and photophobia (Exhibit 3F/10). Although her examination was consistent with tension headaches, no other "red flag symptoms or exam findings were noted" (Exhibit 3F). The claimant was treated with toradol, fluids, Benadryl, and Compazine and reported complete resolution of her headache before she was discharged on the same day (Exhibit 3F/11). She was given a "no driving restriction" but it was temporary (one day); therefore it is unpersuasive (Exhibit 3F/11). ln July 2019, the claimant's treating rheumatologist, Dr. Koenig suspected that her prescription of duloxetine was contributing to her headaches and reports of fatigue and switched her to milnacipran, but noted that headaches remained a common side effect of minacipran [sic] (Exhibit 4F/11).

The claimant returned to the emergency department in September 2019 complaining of headaches (Exhibit 7F). She reported that her headaches had been managed by her rheumatologist, but admitted that she had not been seen by a neurologist. The claimant was treated for her headache and again was discharged in improved and stable condition the same day (Exhibit 7F/9). The claimant did not seek emergent care services for another year, until September 2020 (Exhibit 11F/10). On examination, the claimant exhibited no remarkable findings (Exhibit 11F/11). Indeed, she was noted to be neurologically intact, with a normal mental status, and was

6

>ambulatory in the emergency department.  She was treated similarly as she had in previous admission[s] and discharged in stable condition the same day (Exhibit 11F/12; See also Exhibit 13F/14).  Overall, there are no imaging studies showing any abnormality of the brain or clinical findings showing any residual effects of any headaches.  Therefore, while the claimant may have occasional headaches, they are not documented to have occurred with such frequency as to reasonably interfere with the claimant's ability to engage in basic work activities on a regular and continuing basis.  Accordingly, the claimant's alleged headaches are not a severe impairment.

(R. 21-22).

In evaluating whether Plaintiff's impairments met or medically equaled the severity of a Listed impairment at step three the ALJ determined Plaintiff has only moderate limitations in each of the four broad mental functional areas for evaluating mental impairments (the paragraph B criteria).  Id. at 24.  He also noted that none of the three regulatory criteria which might establish disability based on medical equivalence are present in this record and found Plaintiff has not shown disability based on medical equivalence.  Id. 25.

The ALJ found Plaintiff has the mental RFC:

>to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes.  The claimant can occasionally respond to and have interaction with supervisors, coworkers and the general public.

Id. 25.

In assessing RFC the ALJ said he considered Plaintiff's allegations of symptoms based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p.  Id.  He found Plaintiff's allegations of symptoms "not entirely consistent with the medical evidence and

7

other evidence in the record for the reasons discussed" in his decision. Id. 26. The ALJ noted that despite her complaints of pain and other symptoms and complaints that her medications were not helpful in relieving them, Plaintiff "has not presented with a persistent pattern of chronic motor, sensory, strength, or reflex deficits reasonably consistent with her allegations." (R. 27). The ALJ noted that objective testing revealed degenerative spondylosis, negative rheumatological markers, joint space narrowing in her hands, and a cyst in her right scaphoid and that "nothing in these reports demonstrates disabling functional limitations." Id. He found, "the conservative nature and limited amount of treatment [Plaintiff] has undergone is not supportive of her allegations of disabling limitations." Id. The ALJ noted, "Although she denied doing household chores, the record reflects that the claimant admitted to providers on occasion of performing yardwork." Id. at 29.

### C.    Step Two Standard

An impairment is not considered severe if it does not significantly limit Plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, Plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d at 751. However,

8

she must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on Plaintiff's ability to do basic work activities, it could not prevent Plaintiff from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). Plaintiff must provide medical evidence that she has an impairment and how severe it was during the time she alleges she was disabled. 20 C.F.R. § 404.1512.

The Tenth Circuit has held that if an ALJ has found Plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all Plaintiff's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). Later, in Hill v. Astrue, 289 F. App'x. 289, 291-92, (10th Cir. 2008), the court held that the failure to find additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining Plaintiff's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"

**D.    Analysis**

Plaintiff is correct that imaging studies are not <u>necessary</u> to support the <u>presence</u> of headaches.  But the ALJ here does not question the presence of headaches, he acknowledged that Plaintiff has the impairment of migraine headaches.  (R. 21).  Moreover, Plaintiff is correct to point out that in cases involving migraine headaches it is not unusual that a patient may demonstrate unremarkable findings on examination.  However, the ALJ here relied upon a number of factors together to find that although Plaintiff has migraine headaches, she has not shown that they are severe—that they have more than a minimal effect on her ability to do basic work activities.  He noted that the record does not contain imaging studies showing brain abnormalities and the record did not contain <u>clinical findings</u>—not just examination findings—showing <u>residual effects</u> of headaches.  Finally, and most importantly he found that Plaintiff's headaches are not documented in the record "to have occurred with such frequency as to reasonably interfere with the claimant's ability to engage in basic work activities on a regular and continuing basis."  (R. 21-22).

Plaintiff's argument that the ALJ did not address her reports of the frequency of her headaches misses the point of the ALJ's consideration of documentation.  First, other than her emergency department visits for headaches, Plaintiff does not cite to any medical records wherein she had a headache when being treated by one of her providers, but rather, to her reports to providers that she had headaches and her testimony at the hearing that she had headaches "up to twice per week." (Pl. Br. 10).  This is not documentation of headaches but documentation of reports of headaches.  Further, the ALJ found that Plaintiff's allegations of symptoms were not consistent with the record, and this is further

10

reason to discount Plaintiff's reports of headaches.  As noted supra at 7-8, the ALJ cited inconsistencies in his decision upon which he relied to discount Plaintiff's allegations of symptoms and those reasons are supported by the record evidence.  Although none of those reasons specifically cite a relation to Plaintiff's headaches, the evaluation of Plaintiff's allegations does not require the ALJ to accept those allegations for which he does not find a specific inconsistency.  The burden to prove her allegations is on the Plaintiff and inconsistencies between any allegation and the record evidence provides a basis to question all the allegations.

Moreover, the Commissioner has issued a Social Security Ruling explaining how she handles claims involving a primary headache disorder.  SSR 19-4p, 2019 WL 4169635 (SSA Aug. 26, 2019).  The Ruling explains, "Examples of common primary headaches include migraines, tension-type headaches, and trigeminal autonomic cephalalgias."  Id. 2019 WL 4169635, at *3.  The Ruling provides the documentation requirements the evidence must contain from an acceptable medical source (AMS).  Id. at *6.  The source must make the diagnosis after reviewing the medical history, conducting a physical examination, and "only after excluding alternative medical and psychiatric causes of the person's symptoms.  In addition, the treatment notes must be consistent with the diagnosis of a primary headache disorder."  Id.  The record must contain "[a]n observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an AMS" documenting

> co-occurring observable signs include occasional tremors, problems concentrating or remembering, neck stiffness, dizziness, gait instability, skin flushing, nasal congestion or rhinorrhea (runny nose), puffy eyelid,

>forehead or facial sweating, pallor, constriction of the pupil, drooping of the upper eyelid, red eye, secretion of tears, and the need to be in a quiet or dark room during the examination. In the absence of direct observation of a typical headache event by an AMS, we may consider a third party observation of a typical headache event, and any co-occurring observable signs, when the third party's description of the event is documented by an AMS and consistent with the evidence in the case file.

Id. 2019 WL 4169635, at *6. The agency also considers whether "evidence in the file from an AMS documents ongoing headaches that persist despite treatment." Id. The Ruling also notes, "It is helpful to a physician when a person keeps a "headache journal" to document when the headaches occur, how long they last, what symptoms are associated with the headaches, and other co-occurring environmental factors." Id. at *4. The court notes that none of the suggested documentation is in the record in this case. Nonetheless, the ALJ found that Plaintiff has the medically determinable impairment of migraine headaches. In these circumstances it was not error to find Plaintiff had not met her burden to show her migraines occur with such frequency as to have more than a minimal effect on her ability to perform basic work activities.

The ALJ's explanation, although brief and appearing at step two in the sequential evaluation process, was sufficient to explain why he found Plaintiff's migraines did not require greater limitations in her RFC than the need for "a low stress work environment with no fast-paced production requirements."

### III.     Mental RFC Assessment

Plaintiff points out that the ALJ found the opinions of the state agency psychological consultants, Dr. Toll and Dr. Brandon, persuasive and found the opinion of Plaintiff's psychiatrist, Dr. Clark, that Plaintiff "had some moderate limitations in her

ability to understand and remember, to interact socially, and to adapt" persuasive. (R. 31). She argues that the ALJ erred in that he assessed an RFC that was less restrictive than certain of the opinions he found persuasive but did not explain why he rejected the opinions or resolve the ambiguity created by his conflicting findings. Plaintiff makes two specific arguments. First, she argues the RFC assessment of an ability "to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks" conflicts with the psychological consultants' opinion that Plaintiff "remains capable of … carrying out at least simple instructions" (R. 96), and with Dr. Clark's opinion that Plaintiff is moderately limited in the ability to carry out detailed instructions.

Plaintiff argues this is so because the ALJ found Plaintiff capable of detailed instructions whereas the consultants and Dr. Clark found limitations in her ability to carry out detailed instructions. (Pl. Br. 17). She points out the ALJ found Plaintiff is able to perform three representative jobs which require reasoning level two to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Id. (quoting the Dictionary of Occupational Titles (DOT) listing for each of the representative jobs).

Second, Plaintiff argues the ALJ's assessment that she "can occasionally respond to and have interaction with supervisors" (R. 25) conflicts with Dr. Clark's moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. She argues this is so because "[t]he vocational expert [(VE)] testified that there would be no work available for an individual with limitations as posed by

13

[Plaintiff's] attorney" (Pl. Br. 17), who "would be unable to respond appropriately to criticism from supervisors 20% of the time, so they would be insubordinate or would just kind of lash out, just inappropriate behavior." (R. 67).

The Commissioner argues that the ALJ's evaluation of the medical opinions at issue should be affirmed. (Comm'r Br. 11). The Commissioner notes that the ALJ's assessment of the ability to carry out instructions was limited to "'detailed, but uninvolved' instructions when performing only 'simple, routine, and repetitive tasks' within additional parameters." Id. 12.

She argues that the ALJ also limited Plaintiff's interaction with supervisors to occasional and that "Plaintiff has not shown, and cannot show, that th[e] scenario she posited to the vocational expert was equivalent to Dr. Clark's bare 'moderate' limitation about supervisors."

**A.     Detailed but Uninvolved Instructions**

The court finds no error in the ALJ's finding Plaintiff "is able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks." (R. 25) (finding no. 5, bold omitted). Clearly, this restriction contemplates the ability to perform unskilled work—as the ALJ found. As Plaintiff acknowledges (Pl. Br. 15, 16) and the ALJ found persuasive (R. 29-30, 31), the state agency psychological consultants opined Plaintiff is capable of "carrying out at least simple instructions" (R. 96), and both they and Dr. Clark opined she is moderately limited in the ability to carry out detailed instructions. (R. 94, Pl. Br. 16). Plaintiff has not shown that either carrying out at least simple instructions, or a moderate limitation in the ability to carry out detailed

14

instructions precludes the ability to carry out <u>detailed but uninvolved</u> instructions to perform simple, routine and repetitive tasks.  The ALJ's finding clearly involves more than simple instructions, but the psychological consultants also found that Plaintiff can carry out some quantum more than simple instruction when they opined she can carry out <u>at least</u> simple instructions.

Moreover, Dr. Clark's opinion does not <u>preclude</u> carrying out detailed instructions.  The form Dr. Clark used to provide his opinion explains that an extreme limitation precludes useful functioning in an ability, a marked limitation provides less limitation than extreme and more limitation than moderate, and a moderate limitation is compatible with some ability and is within one standard deviation of normal functioning. (R. 618).  The form used contains a checkbox for "Mildly Limited" but no explanation for the term, and thereby suggests that a mild limitation is equivalent to no limitation. Even if the court ignores that suggestion, a moderate limitation is within one standard deviation of normal functioning.

In an apparent attempt to argue the mental health providers' opinions irreconcilably conflict with the ALJ's finding, Plaintiff argues that each of the representative jobs relied upon by the ALJ "requires a reasoning level of two, which is defined as the ability to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."'  (Pl. Br. 17).  The court does not find a conflict.  As this court explained in <u>Lance Alan M. v. Kijakazi</u>, Civ. A. No. 20-2575-JWL, 2021 WL 5867232, *14 (D. Kan. Dec. 10, 2021):

15

Plaintiff's argument that the ability to understand, remember, and carry out simple instructions conflicts with the ability to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks rests on the assumption that "the ability to understand, remember, and carry out simple instructions" in an RFC can never encompass sufficient ability "to carry out detailed but uninvolved instructions" in an RFC and within the meaning of GED reasoning development level 2. But Plaintiff presents no appropriate authority for h[er] assumption. The DOT explains that

> General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study.
>
> The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.

(DOT, App'x C, Pt. III) available at: https://occupationalinfo.org/appendxc_1.html#III (last visited [October 25, 2022]).

Thus, GED deals with the amount of education (formal or informal) an occupation requires, "reasoning development" is one of three divisions of educational development, and "02 level reasoning development" is the second least demanding of 6 reasoning development levels. While it might be reasonable for a layman, an attorney, or a court to conclude from the DOT definition of 02 level reasoning development that the educational development necessary "to carry out detailed but uninvolved written or oral instructions" is greater than the mental abilities "to understand, remember, and carry out simple, routine, and repetitive tasks in a work environment with no fast-paced production requirements and involving only simple work-related instructions," Plaintiff cites no authority requiring it. Reasoning level in the DOT relates to the educational background a particular occupation requires whereas mental abilities in a Mental Residual Functional Capacity Assessment represent 20 mental functional abilities grouped in 4 categories—Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation. POMS DI 24510.060(B)(2). The ability to understand and remember instructions and the ability to carry out instructions fall within the categories of

16

> Understanding and Memory, and of Sustained Concentration and Persistence, respectively. (R. [77-78, 94]); see also POMS DI 24510.060(B)(2). While educational requirements and mental abilities intuitively appear to be related, Plaintiff has shown no direct correlation and has not shown that the Mental RFC assessed by the ALJ involves greater ability than opined by the state agency psychologists [or Dr. Clark]. This conclusion is reinforced by the fact the regulations define unskilled work as work "a person can usually learn to do … in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. §§ 404.1568, 416.968. Plaintiff may not create a conflict based upon h[er] or h[er] attorney's lay reading of the DOT and the court may not impose its lay view of the evidence, nor its evaluation of the evidence over that of the ALJ. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax v. Astrue, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Id., 2021 WL 5867232, *14 (bracketed citations and bracketed changes added as applicable to this case). Plaintiff has shown no error in the ALJ's assessment of the ability to carry out detailed but uninvolved instructions.

### B.     Ability to Respond Appropriately to Supervisors

A similar result obtains for Plaintiff's argument regarding the ALJ's consideration of Dr. Clark's opinion that Plaintiff is moderately limited in the ability to accept instruction and respond appropriately to criticism from supervisors. As Plaintiff points out, Dr. Clark found Plaintiff moderately limited in this ability. (R. 619). And the ALJ found the moderate limitations opined by Dr. Clark persuasive. Id. at 31. Moreover, the ALJ assessed Plaintiff with the limitation to "occasionally respond to and have interaction with supervisors." Id. 25. Plaintiff argues Dr. Clark's moderate limitation

17

conflicts with the ALJ's assessment because the VE testified that an individual who "would be unable to respond appropriately to criticism from supervisors 20% of the time, so they would be insubordinate or would just kind of lash out, just inappropriate behavior," would be unable to work in the national economy. (R. 67).

While the court finds no problem, and certainly no error, with the VE's testimony, what is missing once again is any authority for the premise that an individual who is <u>unable</u> to respond appropriately to criticism from supervisors 20% of the time, and is insubordinate to or lashes out at supervisors 20% of the time is engaging in behavior accurately described as a moderate limitation in the ability to accept instruction and respond appropriately to criticism (compatible with some ability and within one standard deviation of normal functioning). Dr. Clark certainly did not opine the limitations presented by Plaintiff's counsel to the VE. Such behavior might be described as an extreme limitation (R. 618 ("preclude useful functioning")) or a marked limitation (R. 618 ("Considered to be 2 standard deviations below the norm")). In any case, it can reasonably be viewed as an extreme or a marked limitation not falling within the ALJ's understanding of a moderate limitation and Plaintiff does not point to record evidence or cite to admissible authority compelling a contrary finding. Therefore, Plaintiff has shown no conflict between the RFC assessed and Dr. Clark's opinion or ambiguity in the decision requiring explanation or resolution by the ALJ.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 27, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**